IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID W. SMITH, JR.,             :
    Plaintiff                   :
                              :         No. 1:20-cv-00670
          v.                 :
                              :         (Judge Kane)
UNITED STATES OF AMERICA,    :
    Defendant              :

**MEMORANDUM**

Currently pending before the Court is Defendant's motion to dismiss (Doc. No. 12) pro se

Plaintiff David W. Smith, Jr. ("Plaintiff")'s complaint (Doc. No. 1).  The motion is fully briefed

and ripe for disposition.

I.    **BACKGROUND**

On April 22, 2020, Plaintiff, who is presently incarcerated at the Federal Correctional

Institution in Edgefield, South Carolina ("FCI Edgefield"), initiated the above-captioned action

by filing a complaint pursuant to the Federal Tort Claims Act ("FTCA"), seeking compensation

for injuries he sustained while using a weightlifting machine while incarcerated at the Federal

Prison Camp in Lewisburg, Pennsylvania.  (Doc. No. 1.)  In an Order dated April 23, 2020, the

Court directed service of Plaintiff's complaint upon Defendant.  (Doc. No. 4.)  Defendant filed

its motion to dismiss (Doc. No. 12) on July 13, 2020 and its brief in support thereof (Doc. No.

16) on July 28, 2020.  After receiving an extension of time to do so (Doc. Nos. 13, 18), Plaintiff

filed his response on September 18, 2020 (Doc. No. 19).  Defendant filed a reply brief on

September 24, 2020.  (Doc. No. 20.)

In his complaint, Plaintiff alleges that Defendant "negligently provided [him] access to

weightlifting machines it had been prohibited, since November 1995, from maintaining or

servicing."  (Doc. No. 1 at 1.)  He asserts that on March 16, 2018, he was using a weightlifting

machine "when one of its cables snapped, causing a part of the machine to strike [his] face."

(Id.)  Plaintiff suffered lacerations to his face and was treated by medical staff.  (Doc. No. 16-1 at

2.)  On May 1, 2019, Plaintiff submitted his administrative tort claim to the Bureau of Prisons

("BOP"), arguing that staff members "demonstrated gross negligence in securing [his] personal

safety and subsequent medical care."  (Doc. No. 1-1 at 19.)  Specifically, Plaintiff asserted that

staff members at the Lewisburg prison camp were negligent by allowing repairs to be made to

the weightlifting machines even after such repairs were prohibited by Congress.  (Id. at 19-20.)

Plaintiff's administrative claim was denied on October 31, 2019.  (Id. at 22.)

Based on the foregoing, Plaintiff argues that the Bureau of Prisons ("BOP") "neglected to

remove these dilapidated weightlifting machines from inmates' access for decades after they

were prohibited, by federal law and Bureau policy, from servicing them."  (Id.)  As relief,

Plaintiff seeks $6,470.00 in damages.  (Id.)  Defendant maintains that Plaintiff's complaint is

subject to dismissal because the FTCA's discretionary function exception bars Plaintiff's

negligence claim and because Plaintiff "cannot show either a duty or a breach necessary to state

a negligence claim."  (Doc. No. 16.)

## II.     LEGAL STANDARDS

### A.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

As noted supra, Defendant argues that Plaintiff's complaint is subject to dismissal

because the discretionary function exception to the FTCA bars Plaintiff's negligence claim.  (Id.

at 3-7.)  A motion to dismiss a case based on the discretionary function exception is properly

brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure because it challenges "the

actual failure of [Plaintiff's] claims to comport with the jurisdictional prerequisites" of the

FTCA.  See United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir.

2007); see also Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000).  Because

Defendant's challenge to jurisdiction is factual, "no presumptive truthfulness attaches to

[P]laintiff's allegations."  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d

Cir. 1977).  The Court, therefore, "can look beyond the pleadings to decide factual matters

relating to jurisdiction."  See Cestonaro, 211 F.3d at 752.

**B.       Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

4

### III.    DISCUSSION

### A.    Applicability of the Discretionary Function Exception

Defendant first argues that Plaintiff's negligence claim is barred by the discretionary

function exception to the FTCA.  (Doc. No. 16 at 3-7.)  "The FTCA waives the federal

government's sovereign immunity with respect to tort claims for money damages."  Baer v.

United States, 722 F.3d 168, 172 (3d Cir. 2013).  However, the discretionary function exception

places a limitation on that waiver by eliminating jurisdiction over "claims based upon the

exercise of a discretionary function on the part of an employee of the [G]overnment."  See id.

(citing 28 U.S.C. § 2680(a)).  Specifically, sovereign immunity is maintained as to:

> [a]ny claim based upon an act or omission of an employee of the Government,
> exercising due care, in the execution of a statute or regulation, whether or not such
> statute or regulation be valid, or based upon the exercise or performance or the
> failure to exercise or perform a discretionary function or duty on the part of a federal
> agency or an employee of the Government, whether or not the discretion involved
> be abused.

28 U.S.C. § 2680(a).

The Supreme Court has endorsed a two-part test to determine whether the discretionary

function exception applies to a claim.  See Baer, 722 F.3d at 172 (citing Berkovitz v. United

States, 486 U.S. 531, 536 (1988)).  First, a court must determine whether the challenged action

"involves an element of judgment or choice" on the part of the acting government employee.

See Berkovitz, 486 U.S. at 536.  This prong is not satisfied when a statute, regulation, or policy

prescribes a specific course of action for a government employee to take, so that an appropriate

decision by the employee does not involve the employee's judgment or discretion.  See id.

Second, a court must determine "whether the judgment exercised 'is of the kind that the

discretionary function exception was designed to shield.'"  See Baer, 722 F.3d at 172 (quoting

Berkovitz, 486 U.S. at 536).  In making this determination, a court must keep in mind the basis

for the discretionary function exception—"Congress' desire to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort'"—and consider whether the judgment implicates "considerations of public policy." See Berkovitz, 486 U.S. at 536-37 (quoting United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984)). Furthermore, "[a]lthough a plaintiff bears the burden of establishing that his claims fall within the scope of the FTCA's waiver of the federal government's sovereign immunity . . . the Government has the burden of proving the applicability of the discretionary function exception." See S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 333 (3d Cir. 2012).

In the instant case, Plaintiff's negligence claim is premised on the BOP's alleged failure to adhere to the provisions of the Zimmer Amendment.  The Zimmer Amendment, also referred to as the No Frills Prison Act, "was primarily aimed at reducing or eliminating public funding for perceived 'prison frills.'"  See Jewell v. Gonzales, 420 F. Supp. 2d 406, 421 (W.D. Pa. 2006).  In 1995, the BOP issued a memorandum "providing guidance to wardens on how provisions of the Zimmer Amendment [would] be implemented in all [BOP] institutions."  See Kimberlin v. U.S. Dep't of Justice, 318 F.3d 228, 230 (D.C. Cir. 2003).  The memorandum set forth that funds could not be used to purchase new bodybuilding and weightlifting equipment.  (Doc. No. 1-1 at 14.)  However, "[i]nstitutions with existing bodybuilding/weightlifting equipment [would] be allowed to retain these pieces of equipment."  (Id.)  Moreover, "[n]o funds, irrespective of funding source, [would] be used to repair, to replace[,] or to fabricate this equipment."  (Id.)  The memorandum did provide that "[i]n-house minor repairs may be made to weightlifting benches, mats[,] and weightlifting belts provided that the expenses are minimal and the repairs are performed only to as to ensure that the use of existing equipment is conducted in a manner which

is safe and prevents injury." (Id.)  This memorandum was subsequently included in BOP

Program Statement 5370.11, Inmate Recreation Programs.  (Doc. No. 16-3.)  That Program

Statement provides that institutions may continue to employ weightlifting equipment as long as it

remains operational.  (Id. at 8, 24.)

   "As a threshold matter, before determining whether the discretionary function applies, a

court must identify the conduct at issue."  S.R.P. ex rel. Abunabba v. United States, 676 F.3d

329, 332 (3d Cir. 2012).  Defendant maintains that the conduct at issue is Plaintiff's "assert[ion

of] negligence in permitting inmates to access machines following Congress' passage of the

Zimmer Amendment."  (Doc. No. 16 at 7.)  In support of their argument that the discretionary

function exception applies, Defendant relies upon the Second Circuit's decision in Coulthurst v.

United States, 214 F.3d 106 (2d Cir. 2000).  In Coulthurst, the inmate-plaintiff brought suit under

the FTCA "for injuries to his shoulders, neck, and back while lifting weights in the prison

gymnasium, when a cable snapped on a lateral pulldown machine."  See id. at 107.  The inmate-

plaintiff sought to recover "damages for his injuries caused by the government's negligence in

maintenance of the weight room."  See id.  The district court granted the Government's motion

to dismiss the complaint for lack of subject matter jurisdiction, concluding that the discretionary

function applied to bar the inmate-plaintiff's claim.  See id.

   On appeal, the Second Circuit agreed with the inmate-plaintiff that his complaint

"encompasse[d] conduct which, if proven, [would fall] outside the scope" of the discretionary

function exception.  See id.  The Second Circuit, therefore, vacated the district court's dismissal

and remanded the matter for further proceedings.  See id.  In doing so, the Second Circuit

provided the following analysis:

>    In this case, the district court read the complaint to allege a deficiency in
> the scheduling and procedures for the inspection of the gym equipment.  According

to the district court's analysis, the acts alleged as negligence involved decisions establishing the procedures and frequency of inspection—decisions themselves involving elements of judgment or choice and a balancing of policy considerations (including inmate safety, providing sufficient recreational opportunities to inmates, and efficient resource allocation).    The court therefore concluded that the government is shielded from liability for any negligence arising out of these decisions.  As noted above, the relevant regulations do not mandate any particular course of inspection or the frequency of such inspections, and, thus, the officials at each prison are charged with making decisions about maintenance procedures and frequencies of inspection, balancing the relevant policy considerations in the process.  Cf. [United States v.]Gaubert, [499 U.S. 315, 325 (1991)] (noting that "[d]ay-to-day management . . . regularly requires judgment as to which of a range of permissible courses is the wisest" and holding that decisions fall within the [discretionary function exception]); Fazi v. United States, 935 F.2d 535, 538 (2d Cir. 1991) (same).  The court thus concluded that both prongs of the Gaubert test were met as to these claims, and the court therefore lacked jurisdiction.

However, the complaint is susceptible to various readings.  There are numerous potential ways in which an inspector's "carelessness" may have triggered the accident.  The operative words of the complaint—"negligence and carelessness" in the "fail[ure] to diligently and periodically inspect the weight equipment and cable"—encompass the possibility of various different types of careless and negligent conduct.  On the one hand, the person charged with designing inspection procedures might have designed procedures that were deficient in that an inspector following those procedures would be likely to overlook, or fail to appreciate, a latent danger resulting from a frayed or strained cable.  Similarly, the person deciding how frequently the inspection should be conducted might be negligent in that reasonable precaution might require more frequent inspections than provided in the schedule.  We assume that if the negligence or carelessness involved in the case were of those sorts, the United States would be shielded from suit by the [discretionary function exception].  These types of negligently made decisions would involve elements of judgment or choice, would not be compelled by statute or regulation, and would be grounded in considerations of public policy since they would involve choices motivated by considerations of economy, efficiency, and safety.

On the other hand, the complaint's allegations of negligence and carelessness in the failure to diligently and periodically inspect might also refer to a very different type of negligence.  For example, the official assigned to inspect the machine may in laziness or haste have failed to do the inspection he claimed (by his initials in the log) to have performed; the official may have been distracted or inattentive, and thus failed to notice the frayed cable; or he may have seen the frayed cable but been too lazy to make the repairs or deal with the paperwork involved in reporting the damage.  Such negligent acts neither involve an element or judgment or choice within the meaning of Gaubert nor are grounded in considerations of governmental policy.

All of the foregoing possibilities are fairly alleged by the complaint's allegations that the responsible officers "failed to diligently and periodically inspect

the weight equipment" and "failed to replace the cable after undue wear and tear." The complaint was broad enough to cover both the types of negligence that are covered by the [discretionary function exception] and thus cannot be the basis of suit, and the types of negligence that fall outside the [discretionary function exception]. We therefore think the district court erred in assuming that the negligence alleged in the complaint involved only discretionary functions.

Id. at 109-10.

In response, Plaintiff contends that the conduct at issue involves BOP staff members' creation of unsafe conditions by "[c]ircumventing the prohibitions with fabricated parts and substandard repairs on the aged machine." (Doc. No. 19 at 3.) Defendant argues that Plaintiff's "complaint does not articulate this negligence theory, and [Plaintiff] may not depart from the theory pled in his complaint now in order to avoid dismissal." (Doc. No. 20 at 2 n.1.) In his complaint, however, Plaintiff maintains that BOP employees negligently provided access to weightlifting machines that they were prohibited from maintaining or servicing after passage of the Zimmer Amendment. (Doc. No. 1 at 1.) Plaintiff's complaint includes a copy of his administrative claim, in which he asserted that employees at the Lewisburg Federal Prison Camp circumvented the Zimmer Amendment for years "by allowing the Facilities Department (CMS) to purchase substitute replacement parts and cables for its weightlifting machines." (Doc. No. 1-1 at 20.) He maintained further that inmate workers were permitted to "use these substitute/makeshift parts in their attempts to repair the weightlifting machines for decades after the Zimmer Amendment was enacted." (Id.)

Upon consideration of the parties' briefing, the Court concludes that, like the complaint at issue in Coulthurst, Plaintiff's complaint "is susceptible to various readings." See Coulthurst, 214 F.3d at 109. As noted above, the complaint "encompass[es] the possibility of various different types of careless and negligent conduct." See id. On the one hand, if Plaintiff is alleging solely that BOP officials were negligent by merely continuing to provide weightlifting

machines after passage of the Zimmer Amendment, such a decision would be shielded by suit by

the discretionary function exception because it "would involve elements of judgment or choice,

would not be compelled by statute or regulation, and would be grounded in considerations of

public policy" because it would involve choices motivated by considerations of inmates' health

and safety as well as by economy.  See id.  On the other hand, Plaintiff's allegations of

negligence regarding BOP officials choosing to maintain and repair the weightlifting machines

even after being prohibited from doing so by the Zimmer Amendment "might also refer to a very

different type of negligence."  See id.  At this time, the Court cannot conclude that such an act

involves an element of judgment or choice pursuant to Gaubert or is grounded in considerations

of public policy.  Therefore, the Court cannot conclude that "the negligence alleged in the

complaint involve[s] only discretionary functions."  See id. at 110.  Accordingly, Defendant's

motion to dismiss will be denied with respect to its argument that the discretionary function

exception applies to bar Plaintiff's claim.

**B.      Whether Plaintiff Has Stated a Plausible Negligence Claim**

To recover under the FTCA, a plaintiff must demonstrate that his alleged injury was

"caused by the negligent or wrongful act or omission of any employee of the Government while

acting within the scope of his office or employment, under circumstances where the United

States, if a private person, would be liable to the claimant in accordance with the law of the place

where the act or omission occurred."  See 28 U.S.C. § 1346(b)(1).  In the instant case,

Pennsylvania law applied because the alleged tortious conduct occurred at the Lewisburg Federal

Prison Camp in Lewisburg, Pennsylvania.  Under Pennsylvania law, to "establish a cause of

action for negligence, the plaintiff must prove the following elements: (1) a duty or obligation

recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the

resulting injury; and (4) actual damages." See Northwestern Mut. Life Ins. Co. v. Babayan, 430

F.3d 121, 139 (3d Cir. 2005) (citing Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super.

Ct. 1994)).

Defendant asserts that Plaintiff has failed to state a claim for negligence because he has

failed to articulate an actionable duty and a breach of that duty by BOP officials.  (Doc. No. 16 at

8-9.)  Federal law provides that the BOP must, inter alia, "provide for the safekeeping, care, and

subsistence of all persons charged with or convicted of offenses against the United States, or held

as witnesses or otherwise."  See 18 U.S.C. § 4042(a)(2).  While "[t]he Government is not an

insurer of the safety of a prisoner," see Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976),

prison officials have a duty of "ordinary diligence to keep prisoners safe from harm."  See

Hossic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987).  "However, failure to comply with

a federal statute or regulation is not a sufficient basis, on its own, for an FTCA claim."  See

F.E.I. Co. v. United States, 409 F. Supp. 3d 305, 319-20 (M.D. Pa. 2019) (citing Cecile Indus.,

Inc. v. United States, 793 F.2d 97, 99 (3d Cir. 1986)).

Defendant maintains that Plaintiff has not plausibly alleged a duty and a breach of that

duty because the Zimmer Amendment did not impose a duty upon BOP officials to remove

weightlifting machines from federal prisons.  (Doc. No. 16 at 8-9.)  As noted supra, the

memorandum implementing the Zimmer Amendment provisions explicitly set forth that

"[i]nstitutions with existing bodybuilding/weightlifting equipment [would] be allowed to retain

these pieces of equipment."  (Doc. No. 1-1 at 14.)  Thus, to the extent Plaintiff premises his

claim on the BOP's failure to merely remove weightlifting machines from federal prisons, he has

failed to state a plausible claim for relief because the BOP had no duty to do so.

As discussed above, however, Plaintiff's complaint can also be construed as alleging that BOP officials were negligent by circumventing the Zimmer Amendment for years "by allowing the Facilities Department (CMS) to purchase substitute replacement parts and cables for its weightlifting machines."  (Doc. No. 1-1 at 20.)  He maintains further that inmate workers were permitted to "use these substitute/makeshift parts in their attempts to repair the weightlifting machines for decades <u>after</u> the Zimmer Amendment was enacted."  (<u>Id.</u>)  Defendant asserts that this theory fails to state a claim upon which relief may be granted because Plaintiff has only alleged in a "conclusory fashion" that "the BOP actually violated the Zimmer Amendment's prohibitions against repair."  (Doc. No. 20 at 4.)  Defendant faults Plaintiff for not providing "specific facts to show plausibly that the BOP used 'inferior/substitute parts and substandard parts' in engaging in alleged prohibited repairs."  (<u>Id.</u>)  Given Plaintiff's allegations, however, the Court concludes that he has set forth a plausible negligence claim based upon a theory that BOP officials circumvented the Zimmer Amendment by allowing repairs to be made to the weightlifting machines and making those repairs in a negligent fashion.  The details of such alleged repairs can be gleaned through the discovery process.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Doc. No. 12) will be granted in part and denied in part.  The motion (Doc. No. 12) will be granted to the extent Plaintiff alleges that BOP officials were negligent by failing to remove weightlifting equipment from federal prisons following passage of the Zimmer Amendment.  The motion (Doc. No. 12) will be denied to the extent Plaintiff alleges that BOP officials were negligent by circumventing the Zimmer Amendment by allowing repairs to the weightlifting machines.  An appropriate Order follows.